[Cite as *In re T.A.*, 2012-Ohio-2048.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
|  | : |  |
|  | : | Hon. Patricia A. Delaney, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| IN RE T.A. | : | Hon. William B. Hoffman, J. |
|  | : |  |
|  | : | Case No. 2012CA00029 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of Common Pleas, Family Court Division, Case No. 2009 JCV 01439

JUDGMENT:     AFFIRMED

DATE OF JUDGMENT ENTRY:     May 7, 2012

APPEARANCES:

For Mother-Appellant:

JENNIFER A. ROBERTS
122 Central Plaza North, Suite B3
Canton, OH 44702

For Appellee:

JERRY A. COLEMAN
Stark County DJFS
221 – 3rd St. SE
Canton, OH 44702

*Delaney, P.J.*

{¶1} Mother-Appellant Jessica Yarnell appeals the January 23, 2012 judgment of the Stark County Court of Common Pleas, Family Court Division to grant permanent custody of T.A. to Appellee Stark County Department of Job and Family Services ("SCDJFS").

## FACTS AND PROCEDURAL HISTORY

{¶2} Mother is the mother of T.A., born June 29, 2006, and S.Y., born October 23, 2008. S.Y. is not part of this action because on June 3, 2011, the child was placed in the legal custody of the child's father. T.A.'s father has not appeared in this action.

{¶3} On November 9, 2009, SCDJFS filed a complaint requesting T.A. be placed in the temporary custody of SCDJFS. At the time of the filing, the concerns were the lack of parental supervision and parental drug use. T.A. was demonstrating aggressive behaviors towards S.Y., such as pouring Comet cleanser on the child causing chemical burns. The shelter care hearing was held on November 12, 2009 and T.A. was placed in the temporary custody of SCDJFS.

{¶4} On January 29, 2010, the trial court found T.A. to be neglected and continued his temporary custody with SCDJFS. The trial court adopted a case plan for Mother to complete a parenting evaluation at Northeast Ohio Behavioral Health and follow any recommendations; complete a Quest drug assessment; engage in counseling; complete Goodwill's parenting program; and participate in Intensive Parent Child Interaction (IPCI) therapy. In addition, Mother was not to permit T.A. to be around the maternal grandparents due to their pervasive marijuana use.

{¶5} SCDJFS was granted two six-month extensions of temporary custody. Mother was working on her case plan by completing her parenting evaluation, the Goodwill Parenting program, IPCI, and the Quest assessment. Mother was engaged in mental health counseling. Mother had appropriate housing for T.A.

{¶6} On June 14, 2011, SCDJFS attempted reunification of the family by placing T.A. on an extended visit with Mother. As part of the extended visit, Mother was to take T.A. to protective daycare, continue his counseling with Child and Adolescent Behavioral Health, and to abide by the court order prohibiting contact between T.A. and his maternal grandparents. Mother was also to remain compliant with her services and to refrain from using illegal substances.

{¶7} During the extended visit, Mother did not take T.A. to his counseling or to protective daycare. Mother permitted T.A. to visit with his maternal grandparents. Mother also missed her counseling appointments. She was not in counseling in June, July, August, and September.

{¶8} During the extended visit, Mother tested positive for marijuana use. She tested positive on July 26, August 1, August 10, and August 23.

{¶9} SCDJFS removed T.A. from Mother's care on August 1, 2011 and returned him to his foster home.

{¶10} In September 2011, Mother's visitation with T.A. was terminated because of T.A.'s negative reactions to the visits. T.A. had tantrums, defecated in his pants, and hit people after visitation with Mother due to her confusing messages to T.A. Mother told T.A. his foster mother was his "fake mom" and T.A. did not have to listen to her. With the termination of visitation, T.A.'s outbursts and negative behavior were

less dramatic and less frequent. T.A. receives services for his emotional and behavioral concerns through Child and Adolescent Behavioral Health, Northeast Ohio Behavioral Health, and Akron Children's Hospital. T.A. is bonded with his foster family.

{¶11} Dr. Aimee Thomas of Northeast Behavioral Health Services examined Mother for her parenting evaluations. During her assessment, Mother admitted to smoking marijuana all day, every day when she was parenting her children. Dr. Thomas felt Mother's drug usage directly contributed to Mother's poor supervision of her children. Dr. Thomas recommended that Mother demonstrate nine months of sobriety before placing T.A. with Mother.

{¶12} T.A. has been in the temporary custody of SCDJFS since November 12, 2009. SCDJFS filed a motion for permanent custody on September 16, 2011.

{¶13} The Guardian ad litem recommended that SCDJFS be granted permanent custody of T.A.

{¶14} On January 22, 2012, the trial court held a hearing on the motion for permanent custody. The trial court granted the motion for permanent custody on January 23, 2012. It is from this decision Mother now appeals.

## ASSIGNMENTS OF ERROR

{¶15} Mother raises two Assignments of Error:

{¶16} "I. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND

CONVINCING EVIDENCE THAT IT IS IN THE BEST INTEREST OF THE MINOR CHILDREN TO GRANT PERMANENT CUSTODY.

{¶17} "II. THE TRIAL COURT ERRED BY FINDING GROUNDS FOR PERMANENT CUSTODY AS SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**ANALYSIS**

**I., II.**

{¶18} We consider Mother's first and second Assignments of Error together.

{¶19} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries*, 5th Dist. No. CA–5758, 1982 WL 2911 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). Furthermore, it is well established that the trial court is in the best position to determine the credibility of witnesses. *See, e.g., In re Brown,* 9th Dist. No. 21004, 2002–Ohio–3405, ¶ 9, citing *State v. DeHass*, 10 Ohio St .2d 230, 227 N.E.2d 212 (1967).

{¶20} R.C. 2151.414(B)(1) reads as follows: "Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant

permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

{¶21} "(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

{¶22} "* * *

{¶23} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *."

{¶24} In this case, the trial court found T.A. had been in the temporary custody of SCDJFS for a period greater than 12 months of a consecutive 22-month period. We find the record supports this conclusion.

{¶25} The trial court went on to make a determination that T.A. could not be placed with either parent within a reasonable time nor should T.A. be placed with either parent. In determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, a trial court is to consider the existence of one or more factors under R.C. 2151.414(E), including whether or not "[f]ollowing the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to

substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties." *See* R.C. 2151.414(E)(1).

{¶26} T.A. was removed from Mother's care because of her drug dependency, which affected her ability to supervise her children and meet T.A.'s needs. Mother complied with her case plan and abstained from drug usage when T.A. was temporarily removed from Mother's care. Based on Mother's compliance, SCDJFS reunified Mother and T.A. with the goal of permanent reunification. Within weeks of T.A. being in her care, Mother resumed using marijuana and failed to do the things necessary to care for T.A. and herself. Mother did complete her case plan, but could not maintain her success while caring for T.A. The evidence shows that T.A. requires structure and consistency but Mother cannot provide those things while she is drug dependent.

{¶27} The trial court next determined it was in T.A.'s best interests to be placed in the permanent custody of SCDJFS. It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children*, 5th Dist. No. 2000CA00244, 2000 WL

1700073 (Nov. 13, 2000) quoting *In re Awkal*, 95 Ohio App.3d 309, 316, 642 N.E.2d 424 (1994).

{¶28} In determining the best interest of a child for purposes of permanent custody disposition, the trial court is required to consider the factors contained in R.C. 2151.414(D). These factors are as follows:

{¶29} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;

{¶30} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

{¶31} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;

{¶32} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

{¶33} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

{¶34} T.A. has a history of oppositional and aggressive behavior. He first came to the attention of SCDJFS because he poured Comet cleanser on his younger sibling, causing chemical burns. He was removed from two daycare programs because of his aggressive behavior.

{¶35} Mother had visitation with T.A. until September 2011, when Mother told him his foster mother was his "fake mom" and he did not have to listen to her. During that time, T.A.'s behaviors degenerated into temper tantrums, aggression, and soiling his pants. He put a child in his daycare into a chokehold. When the visitation terminated, T.A.'s behavior improved.

{¶36} T.A. is in a foster-to-adopt home. He has resided with the family for two years and is bonded with the family. The foster family meets T.A.'s needs and provides him the structure he requires.

{¶37} The Guardian ad litem recommended it would be in T.A.'s best interests to be placed in the permanent custody of SCDJFS.

{¶38} Based on this record, we find no error in the trial court's determination it would be in the best interests for T.A. to be placed in the permanent custody of SCDJFS.

**CONCLUSION**

{¶39} Mother's first and second Assignments of Error are overruled.

{¶40} The judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed.

By: Delaney, P.J.

Gwin, J. and

Hoffman, J. concur.

 

 

_____

HON. PATRICIA A. DELANEY

 

_____

HON. W. SCOTT GWIN

 

_____

HON. WILLIAM B. HOFFMAN

 

PAD:kgb

[Cite as *In re T.A.*, 2012-Ohio-2048.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| | : | |
| IN RE T.A. | : | |
| | : | |
| | : | JUDGMENT ENTRY |
| | : | |
| | : | |
| | : | Case No. 2012CA00029 |
| | : | |

For the reasons stated in our accompanying Opinion on file, the judgment of the Stark County Court of Common Pleas, Family Court Division is affirmed. Costs assessed to Appellant.

_____
HON. PATRICIA A. DELANEY

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN